# United States District Court
# Western District of New York

LINZA HENRY FORD, individually and on behalf of others similarly situated; and THOMAS BELL,

          Plaintiffs,

     -vs-                               DECISION & ORDER

GANNETT CO., INC., Individually and d/b/a Star Gazette,            03-CV-6454-CJS-MWP

          Defendants.

**APPEARANCES**

For Plaintiff:                       Dan Getman, Esq.
                                      Law Office of Dan Getman
                                      52 S. Manheim Boulevard
                                      New Paltz, NY 12561
                                      (845) 255-9370
                                      E-mail: getmanlaw@hvc.rr.com

For Defendants:                Eugene D. Ulterino, Esq.
                                      Nixon Peabody LLP
                                      Clinton Square, P.O. Box 31051
                                      Rochester, NY 14603
                                      (585) 263-1000
                                      E-mail: eulterino@nixonpeabody.com

                                      Todd R. Shinaman, Esq.
                                      Nixon Peabody LLP
                                      Clinton Square, P.O. Box 31051
                                      Rochester, NY 14603
                                      (585) 263-1583
                                      E-mail: tshinaman@nixonpeabody.com

## INTRODUCTION

Plaintiffs are suing defendants for overtime pay under the Fair Labor Standards Act of 1938 ("FLSA"). Before the Court is defendant's motion (# 34) for partial summary judgment in which defendant argues that plaintiffs are exempt from the FLSA. For the reasons stated below, the Court grants defendant's motion.

## PROCEDURAL HISTORY

Plaintiffs Linza Henry Ford ("Ford") and Todd Hill ("Hill") filed a complaint against Gannett Co. Inc., individually and doing business as the Star Gazette ("Gazette"). The Gazette is a wholly owned subsidiary of Gannett Satellite Information Network, Inc., which in turn is a wholly owned subsidiary of Gannett Co., Inc. Subsequent to the filing of this lawsuit, Thomas L. Bell ("Bell"), employed as a district sales manager ("DSM") by the Gainesville Times, opted into the lawsuit. (*See* Consent to Become a Party (# 4), Feb. 12, 2004.) Ford and Bell sought to certify a class consisting of DSMs employed by any newspaper owned directly or indirectly by Gannett Co., Inc., and defendants opposed the certification, arguing that any class should be limited to DSM's employed by the Gazette. Following argument on that motion, U.S. Magistrate Judge Payson, to whom this case has been referred for all non-dispositive pretrial matters, suggested focusing on the issue of whether DSMs were exempt under the FLSA and that any issue of who is an employee for purposes of the FLSA be held in abeyance until the exemption question was answered. The parties stipulated to this, and the stipulation was approved by Judge Payson. The same stipulation also permitted plaintiffs to file an amended complaint naming Bell as a plaintiff and Gannett Georgia, L.P., the operator of the Gainesville Times during the period

of Bell's employment, as an additional defendant, subject to the right of defendants to move to sever or dismiss the amended complaint. Limited discovery was completed and the parties have agreed to proceed at this time on the claims of Hill and Ford only. Defendants now move for partial summary judgment to dismiss the claims of Ford and Hill. All issues pertaining to Bell and Gannett Georgia, L.P. are reserved for resolution at a later time, if necessary.

## FACTUAL BACKGROUND

The following facts are taken from plaintiffs' and defendant's submissions pursuant to Local Rule 56.1 and are undisputed, except as indicated below. Ford was employed as a District Service Manager, subsequently titled District Sales Manager for the Elmira Star Gazette ("Gazette"), a newspaper, between March 2001 and October 2003. Hill was employed as a DSM for the Gazette between December 2000 and August 2003. Ford and Hill were paid on a salary basis the entire time they worked as DSMs.

A DSM was responsible for a district consisting of many routes in which several carriers delivered newspapers to customers' homes. Among other things, a DSM's duties included: overseeing the carriers to ensure that they delivered newspapers every day in accordance with the expectations of the customers; responding to customer complaints; recruiting and training new carriers; delivering newspapers when no carrier was available, or failed to show up; delivering newspapers if the carrier was out sick or on vacation, or when a carrier failed to deliver to a house on his route; selling home delivery subscriptions; delivering free papers to prospective customers in order to generate sales; calling customers to resolve delivery issues; screening carrier candidates; explaining to carriers the contract with defendants and how the billing worked; and delivering supplies such as

posts, boxes, rubber bands, and bags.

The majority of newspaper routes were "motor routes" in which a carrier, or a DSM, would drive the route and deliver newspapers to customers along that route. A DSM spent many hours per week in his car delivering newspapers to customers. Ford spent approximately one-and-a-half to two hours every day delivering newspapers when he was a district service manager, and approximately two-and-a-half to three hours every day delivering newspapers when he became a district sales manager. Ford submitted mileage reimbursement forms showing that he frequently drove many miles to deliver shortages or deliver newspapers to routes.

Hill delivered newspapers with varying frequency ranging from every day, to every other day, to a few days per week. In 2002 and 2003, he spent between 20% and 50% of his time delivering newspapers. Hill also submitted mileage reimbursement forms showing that he frequently drove many miles to deliver shortages or deliver newspapers on routes. Defendants submit, and plaintiffs concede, that one of the four major duties of a DSM was to deliver newspapers.

The Gazette often contained supplemental publications and inserts consisting of such things as the Sunday comics, the USA Weekend magazine, and inserts from local and national retailers. Supplemental inserts were included in the Gazette every Sunday as well as most other days of the week. The inserts were printed on behalf of advertisers who wanted their advertisements inserted in the newspaper. Those inserts were shipped to the Gazette to be inserted on a certain date. Advertisers had the ability to choose whether their inserts were put in the newspapers slated for delivery in a certain area, or to be included in the full run of newspapers. Advertisers usually specified a date on which

the inserts were to be delivered with the newspapers. If the inserts were accidentally not included in the newspaper on the specified date, the Gazette would have to negotiate a remedy with the advertiser. Several advertisers advertised with the Gazette every week, including several grocery stores, several furniture stores, as well as department stores such as Sears, Bon Ton, Kaufmann's, and JC Penney. Some combination of inserts were delivered with the Gazette almost every day of the week.

Many of the advertising inserts for the Gazette were printed and shipped from outside New York State. In addition, the USA Weekend and the comics inserts to the Sunday newspapers are, and were, both printed and shipped from outside of New York. The inserts would come to the Gazette between two and ten days before insertion in a Sunday newspaper; and between two and seven days before insertion in a daily newspaper. The inserts usually came in on pallets in either boxes, clear plastic, or bundles. The inserts were stored in the mail room until they were ready for insertion in the paper. The Gazette did not produce or modify these inserts; they merely assembled them with the newspapers so that the inserts could be delivered to the customers.

## SUMMARY JUDGMENT STANDARD

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing

that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis

of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

## DISCUSSION

During oral argument, plaintiffs abandoned their position that the Secretary of Transportation has no jurisdiction to regulate driver-salesman under 49 U.S.C. § 31502(b) (2005) and 49 C.F.R. 395.1(c) (2005). Thus, the Court will address only defendant's argument in support of their motion for summary judgment, that the Motor Carrier Act exemption to the FLSA applies to plaintiffs here, as well as the points plaintiffs raise in opposition. In that regard, the Court finds that the two cases relied upon by defendants, *Barron v. Lee Enterprises*, 183 F. Supp. 2d 1077 (C.D. Ill. 2002) and *Webb v. Athens Newspapers, Inc.*, 999 F. Supp. 1464 (M.D. Ga. 1998) are persuasive authority that the Motor Carrier Exemption applies to plaintiffs.

The FLSA established minimum wage and overtime requirements for covered employees engaged in commerce or the production of goods for commerce. 29 U.S.C. §§ 206 and 207. Several exemptions restrict or modify the FLSA requirements as they apply to certain classes of employees. 29 U.S.C. § 213. Included in the exemptions is the Motor Carrier Act exemption, section 13(b)(1), which provides an exemption from the

maximum hours and overtime provisions of the FLSA.  29 U.S.C. § 213(b)(1). FLSA section 13(b)(1) exempts an "employee with whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935." 29 C.F.R. § 782.1(a); see also 29 U.S.C. § 213(b)(1).  The Secretary of Transportation does not need to actually regulate the employee or employer in order for that exemption to apply.  *Perrine vs. Lee Enterprises, Inc.*, 183 F. Supp. 2d 1077, 1086 of (C.D. Ill. 2002); see, *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47 (1943) ("Section 13 (b) (1) exempts from the maximum hour limitation of the Fair Labor Standards Act those employees over whom the Interstate Commerce Commission "has power to" prescribe maximum hours of service."); *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1997) ("Secretary's decision not to exercise his regulatory authority over a category of carriers does not exempt them from his authority.").

The Secretary of Transportation has the power to regulate "motor carriers engaged in interstate commerce," which has been defined to include the "practical continuity of movement" from suppliers outside a state, through a warehouse, and then to customers within the state "whose prior orders or contracts are being filled."  *Barron*, 183 F. Supp. 2d at 1086 (*citing Klitzke*, 110 F.3d at 1469).  "Even a minor involvement in interstate commerce as a regular part of an employee's duties subjects the employee to the jurisdiction of the Secretary of Transportation." *Barron*, 183 F. Supp. 2d at 1086 (*citing Williams v. Alex's Transp., Inc.*, 969 F. Supp. 1142, 1144 (C.D. Ill. 1997)).[1]

---

[1]"The court cases relevant to this issue include 'Morris v. McComb', 'Starrett v. Bruce,' 391 F. 2d 320 (10th Cir. 1968), 'Brennan v. Schwerman Trucking Co.,' 540 F. 2d 1200 (4th Cir. 1976), 'Rogers Cartage Co. v. Reynolds', 166 F. 2d 317 (6th Cir. 1948), 'Kerr v. Jeans,' 193 F. 2d 572 (5th Cir. 1952), 'Pyramid Motor Freight v. Ispass,' 330 U.S. 695 (1947), 'Sinclair v. Beacon Gasoline Co.,' 447 F. Supp. 5,
(continued...)

As the court in *Barron* stated, "nonjudicial enforcement and interpretation of the FLSA is done by the Department of Labor through the Administrator of the Wage and Hour Division." *Barron*, 183 F. Supp. 2d at 1086. The district court then referred to the Wage and Hour Division's Field Operations Handbook, which expressed the views of the Administrator on the applicability of the exemption under section 213(b)(1), and stated that "[w]hile these interpretations are not binding on the courts, they can provide guidance." *Id*. In the Handbook, the Administrator writes,

> (a) the delivery of newspapers within the State in which they are printed is not transportation over which the DOT [Department of Transportation] has jurisdiction. While such delivery drivers are engaged in the interstate communication or transmission of news so as to be covered by the FLSA, they are not transporting property (the newspaper) in interstate or foreign commerce within the meaning of the Motor Carrier Act. (b) certain newspapers of the type described in (a) above contain as an integral part weekly supplements, such as comics, magazines and the like, which are produced outside the State. If these supplements are obtained by the newspaper in complete and finished form and no processing work is performed on them by the newspaper establishment, the movement within the State of the supplements printed out of State constitutes part of a practical continuity of movement of goods from the point of origin to the ultimate destination. Thus, the Sec[tion] 213(b)(1) exemption is applicable to the delivery drivers who transport and deliver the newspaper containing the supplements. The temporary storage of the supplements at the newspaper establishment awaiting insertion into the paper does not change the interstate character of the transportation.

Department of Labor, Wage and Hour Division's Field Operations Handbook 24d00 (*quoted in Barron*, 183 F. Supp. 2d at 1086-87).

---

[1](...continued)
11 (W.D. La. 1976), aff'd 571 F. 2d 978 (5th Cir. 1978), and 'Cooker v. Sexton Motor, Inc.,' 469 F. 2d 206 (1st Cir. 1972). These cases establish the basic tests for determining whether a driver is subject to Federal jurisdiction under 49 U.S.C. 304. They hold that even a minor involvement in interstate commerce as a regular part of an employee's duties will subject that employee to the jurisdiction of the FHWA." 46 F.R. 37902, Jul. 23, 1981.

Plaintiffs contend that the Handbook is of no use in determining the issue before the Court since, "the Department of Transportation, not the Department of Labor, is responsible for interpreting exemptions from the MCA [Motor Carrier Act]." *Benson v. Universal Ambulance Service, Inc.*, 675 F.2d 783, 785 (6th Cir. 1982) (*quoted in* Pl.s' Brief in Opp'n at 15). They further argue that the item transported by plaintiffs consisted of a local newspaper, made up from components that "came to rest" at defendant's warehouse before being assembled into the finished product, the Gazette (with inserts). The Court is unpersuaded by this line of reasoning and finds the cases concerning raw materials relied upon by plaintiffs in support of their position to be distinguishable. The raw materials in the cases relied upon by plaintiffs were intended by the shipper to come to rest in the warehouses and manufacturing plants, to be converted to new products, or in the case of *case*, to be distributed locally as new demands required. In contrast, the newspaper inserts here were never intended by the out of state printers to come to rest at defendant's warehouse. They were intended to be delivered to the ultimate customers of the newspaper, unaltered in form or content. The inserts were dated material, not fungible raw materials to be subsumed into a new finished product, or fungible goods awaiting local demands. Failure to deliver them to the newspaper's subscribers, free of charge to the subscribers, on the dates indicated, rendered them useless to the out of state printers, and *their* customers, the advertisers.

Both the *Webb* and *Barron* courts granted judgment to the defendant newspapers holding that the Motor Carrier Act exemption to the FLSA applies to newspaper district managers who sometimes delivered newspapers containing inserts from out-of-state. For the same reasons stated in those cases, the Court finds that Ford and Hill were exempt

from the FLSA overtime requirements.

Relying on 49 U.S.C. §§ 13501 and 13506 (2005), plaintiffs also contend that the transportation of newspapers is inapplicable to the Motor Carrier Act. Specifically, they cite to § 13506(a)(7), which states in pertinent part, "[n]either the Secretary nor the Board has jurisdiction under this part over ... a motor vehicle used only to distribute newspapers." This statute appears to refer to the actual vehicle in which newspapers are transported, not the driver thereof. Further, the "part" appears to be a reference to the part in which § 13506 is found, specifically Title 49, Transportation, Subtitle IV, Interstate Transportation, Part B, Motor Carriers, Water Carriers, Brokers, and Freight Forwarders.  The FLSA section 13(b)(1) Motor Carrier Exemption, codified in 29 U.S.C. § 213(b)(1), specifically refers to 49 U.S.C. § 31502, which is contained in Title 49, Transportation, Subtitle VI, Motor Vehicle and Driver Programs, Part B, Commercial. Section 31502 contains the Secretary of Transportation's authority to regulate the qualifications and hours of laborers, which provides the exemption upon which the *Webb* and *Barron* courts relied. The Court also agrees with defendant's argument that the Second Circuit's holding in *Bilyou v. Dutchess Beer Distr., Inc.*, 300 F.3d 217, 226 (2d Cir. 2002) supports their position that the provisions of Title 49 in Subtitle VI, Part B, do not pertain to the provisions of Subtitle IV, Part B.

## CONCLUSION

Accordingly, defendants' motion (# 34) for partial summary judgment is granted, and plaintiffs Ford's and Hill's claims for overtime under the FLSA are dismissed. The case will proceed in accordance with the Order (# 33) entered on May 18, 2005.

IT IS SO ORDERED.

DATED: Rochester, New York
   November 18, 2005  ENTER.


           /s/ Charles J. Siragusa
           CHARLES J. SIRAGUSA
           United States District Judge